1.  UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x          Case No.: 12-CV-0909(JS)(SIL)
TAWANA SCOTT, individually
and as Administratrix of the
Estate of KEVIN TURNER,

                              Plaintiffs,

           - against –                                        **JOINT PRE-TRIAL ORDER**

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE OFFICERS JASON LaROSA and
KENNETH HAMILTON, BROOKHAVEN
MEMORIAL HOSPITAL, and MARGARET L.
MACLEOD, M.D.,

                              Defendants.
-------------------------------------------------x

Joanna Seybert, District Judge:

       Having conferred among themselves, the parties adopt the following statements, directions,

and agreements as the Pretrial Order:

2.  **TRIAL COUNSEL:**

       For Plaintiff TAWANA SCOTT, individually and as Administratrix of the Estate of
KEVIN TURNER:

       GATHMAN & BENNETT, LLP
       By: John C. Bennett, Esq. (JB2560)
       Co-Counsel for Plaintiff
       191 New York Avenue, 2nd Floor
       Huntington, New York 11743
       (631) 423-7777
       Fax (631) 423-7784
       jbennett@gathbenlaw.com

       CARTIER BERNSTEIN AUERBACH
       AND STEINBERG, P.C.
       By: Kenneth A. Auerbach, Esq.
       By: Amanda E. Spinner, Esq.
       Co-Counsel for Plaintiff
       100 Austin Street, Building 2

1

Patchogue, New York 11772
(631) 654-4900
Fax (631) 654-0724
Kauerbach@cbaslawyers.com
Aspinner@cbaslawyers.com

For Defendant COUNTY OF SUFFOLK:

DENNIS M. COHEN, Suffolk County Attorney
By: Christiana McSloy, Esq.
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788-0099
(631) 853-4055
Fax (631) 853-5833
christiana.mcsloy@suffolkcountyny.gov

For Defendant Police Officer JASON LAROSA:

William Patrick Nolan, Esq.
1103 Stewart Avenue, Suite 200
Garden City, New York 11530
(516) 633-0654
Fax (516) 977-1977
wpnesq@gmail.com

For Defendant KENNETH HAMILTON:

REYNOLDS, CARONIA, GIANELLI & LAPINTA P.C.
By: Anthony M. La Pinta, Esq. (AML-6505)
By: Kyle O. Wood, Esq. (KOW-2736)
200 Vanderbilt Motor Parkway, C-17
Hauppauge, NY 11788
(631) 231-1199
Fax (631) 300-4380
amlapinta@rcgllaw.com
kwood@rcgllaw.com

For Defendants BROOKHAVEN MEMORIAL HOSPITAL and  MARGARET  L.
MACLEOD, M.D.:

Deborah A. Aviles
Christine B. Hickey
Lewis Johs Avallone Aviles,
1377 Motor Parkway Suite 400

Islandia, NY 11749
631-755-0101 (Ext 1432)
631-393-1432 (Direct Dial)
631-755-0117 Fax
daaviles@lewisjohs.com
cbhickey@lewisjohs.com

**3.** **NATURE OF ACTION AND JURISDICTION/VENUE:**

      This is a civil action as against the COUNTY OF SUFFOLK, POLICE OFFICER JASON LaROSA and KENNETH HAMILTON alleging damages as a result of claimed violation under 42 U.S.C. Section 1983 alleging excessive force against the Defendants Hamilton and LaRosa in Violation of the decedents rights as secured by the Fourth Amendment.  Plaintiffs also commenced an action against BROOKHAVEN MEMORIAL HOSPITAL and DR. MARGARET MACLEOD for medical malpractice, and wrongful death after plaintiff's decedent Kevin Turner presented to the emergency room at Brookhaven Memorial Hospital via ambulance on April 6, 2010 with severe injuries after interacting with police officers following a vehicle stop of the decedent.

      The subject matter jurisdiction is founded upon 28 U.S.C. Section 1331 for all Federal Claims and this action arises under the Laws of the United States and further, pursuant to 28 U.S.C. Section 1367 for all New York Pendant Law Claims, as those claims are also related to the claims in this action under Federal Law that they form a basis of the same case or controversy under Article 3 of the United States Constitution.

      The venue in this District is founded upon 28 U.S.C. Section 1391 (B) (2) as all actions comprising the claims for relief occurred within this Judicial District and pursuant to Section 29 U.S.C. Section 1391 (B) (1) as one or more of the Defendants reside within the Judicial District, there is no dispute between the parties regarding Jurisdiction or Venue.

The Pendant State Law claims include claims for assault, battery, and wrongful death as against the Defendants Hamilton and LaRosa. The County secured a partial grant of Summary Judgment as to certain of their claims brought by Plaintiff under 42 U.S.C. Section 1983, however, potential claims, which at present, have been bifurcated, may exist pending upon the ruling ultimately issued by this Court. For the time being, any claims as against the County are bifurcated.

This Court has supplemental jurisdiction over plaintiffs wrongful death and negligence claims pursuant to this Courts Memorandum and Order dated March 22, 2022 wherein the Court found that since there are federal claims against the other Defendants, and the Hospital Defendants put forth no argument that Plaintiff's remaining claims against them do not form part of the same case or controversy as Plaintiff's remaining federal claims against the Officer Defendants, the Court must exercise supplemental jurisdiction over these state law claims. The Second Circuit has held that "a district court may not decline to exercise supplemental jurisdiction over state law claims where federal claims remain against other defendants and the state law claims 'form part of the same case or controversy.'" *Anderson v. City of Mount Vernon*, No. 09-CV-7082, 2018 WL 557903, at *2 (S.D.N.Y. Jan. 23, 2018) (quoting *Mejia v. Davis*, No. 16-CV-9706, 2018 WL 333829, at *7 (S.D.N.Y. Jan. 8, 2018)); see also *Briarpatch Ltd. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 308 (2d Cir. 2004); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002).

**Defendants BROOKHAVEN and MACLEOD Position**
**Regarding Subject Matter Jurisdiction**

Dispute the above, the two only remaining claims against Brookhaven Memorial Hospital Medical Center and Dr. MacLeod are medical malpractice and wrongful death state law claims.

4. <u>**CLAIMS AND/OR DEFENSES**</u>:

Plaintiff claims that as a result of excess force employed by the Defendants Hamilton and LaRosa during the course of an arrest on April 6, 2010, the Plaintiff decedent sustained a Subdural Hematoma, a Craniotomy, laceration of the spleen, a Pancreatomy, a Splenectomy, sepsis, Brain Damage, Organ Failures, Pressure Ulcers, Bronchopneumonia, Renal Failure, Pleural Effusions and ultimately death on or about January 2, 2011.  Plaintiff claims pain and suffering from April 6, 2010, through the date of death and additionally, claims loss of parental nurturing and guidance of two surviving children.  Plaintiff also asserts pending State Law Claims sounding in assault, battery, and wrongful death.

**Defendant Police Officer Jason LaRosa and Police Officer Kenneth Hamilton defenses:**

On April 6, 2010, Mr. Turner committed numerous crimes that endangered the officer's lives as well as the residential community he fled into in operating his motor vehicle in a reckless manner and causing an accident. Additionally, Turner ignored the officer's commands, actively resisted arrested, assaulted the officers, attempted to grab Officer LaRosa's gun, and was involved in a life and death struggle with Officers Hamilton and LaRosa. Here the force used by the Officers was necessary and reasonable to defend

themselves against the attacks of Turner and to subdue and handcuff Turner during the violent struggle.

The Police Officer Defendants contend the Complaint fails to set forth facts sufficient to constitute a deprivation of any constitutional right or other basis for a civil rights claim. The Complaint fails to state a claim upon which relief can be granted.

The Police Officer Defendants contend that they used reasonable force against the Plaintiff and contest the true nature, extent, and cause of the Plaintiff's purported injuries. Additionally, the Police Officer Defendants contend that the damages sustained by the Plaintiff were caused by his own culpable and /or negligent behavior. They further contend that they acted as they did, solely pursuant to their duties and responsibilities as law enforcement officials, and at all times acted in good faith in that they were exercising and acting within their statutory and constitutional powers.

The individual Police Officer Defendants contend that they are entitled to judgment in their favor on the basis of qualified immunity.

The County Defendants contend that plaintiffs' *Monell* claim against it is without merit as plaintiffs cannot produce any evidence that a policy or custom on the part of the County caused the alleged constitutional violations by the individual defendants, nor is there any evidence of a widespread or pervasive practice among police officers of unconstitutional abuse of the rights of civilians, or that any policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action

to prevent the violations of constitutional rights. Therefore, summary judgment is appropriate. In the event that this matter proceeds to trial on *Monell* liability, the County respectfully reserves its right to file a supplemental pre-trial order.

**Medical Malpractice Claims:**

(1) Whether Brookhaven Memorial Hospital Medical Center staff, including Dr. Margaret MacLeod, failed to meet the applicable standard of care on April 6, 2010, by failing to timely diagnose Mr. Turner's increasing intracranial pressure with imminent herniation.

(2) Whether Brookhaven Memorial Hospital Medical Center staff, including Dr. Margaret MacLeod, failed to meet the applicable standard of care on April 6, 2010, by failing to timely transfer Mr. Turner to Stony Brook University Hospital.

(3) Whether Brookhaven Memorial Hospital Medical Center staff, including Dr. Margaret MacLeod failed to meet the applicable standard of care on April 6, 2010, by failing to timely administer indicated treatment to Mr. Turner, including but not limited to, surgical intervention for his increased intracranial pressure.

(4) Whether the failure by defendants to meet the applicable standards of care on April 6, 2010, resulted in reducing Mr. Turner's chance to survive his acute subdural hematoma with little or no deficit.

(5) Whether the failure by defendants to meet the applicable standards of care on April 6, 2010, resulted in Mr. Turner's death on January 2, 2011.

The plaintiff's claims under EMTALA were dismissed on summary judgment by this Court's Order dated March 22, 2022.

**Defenses to the Medical Malpractice Cause of Action**

(1) At all times, on April 6, 2010, during the care and treatment of the plaintiff at Brookhaven Memorial Hospital Medical Center, the hospital, its staff including Dr. Margaret L. MacLeod acted in accordance with good and accepted medical practice and within the standard of care.

(2) The defendants on April 6, 2010, timely and appropriately diagnosed Mr. Turner's increased intracranial pressure with herniated and subdural hematoma.

(3) At all times, on April 6, 2010, during Mr. Turner's presentation at Brookhaven Memorial Medical Center, the Brookhaven Memorial Hospital Medical Center staff including Dr. MacLeod timely, appropriately, and in accordance with good and accepted practice administered indicated treatment to Mr. Turner and timely and appropriately transferred the patient to Stony Brook University Hospital for surgical intervention for his intracranial pressure and subdural hematoma when surgical intervention could not be performed at Brookhaven Memorial Hospital Medical Center.

(4) Nothing that the defendants Brookhaven Memorial Medical Center, its staff including but not limited to Dr. MacLeod did or did not do on April 6, 2010, cause or contribute to the cause of any of the plaintiff's injuries and damages alleged by the plaintiff. Furthermore, nothing the defendants did or did not do caused a reduction of the plaintiff's chance to survive his acute subdural hematoma with little or no deficit.

(5) Lastly, nothing that the defendants Brookhaven Memorial Hospital Medical Center, its staff including Dr. MacLeod did or did not do resulted in the death of Mr. Turner on January 2, 2011.

Additionally, the defendant maintains the following three affirmative defenses:

(1) That the injuries of the plaintiff were caused in whole or in part by his own contributory negligence and/or culpable conduct and/or by persons and/or events over which this defendant had no control and his claims are therefore barred or the amount of same is diminished accordingly.

(2)      That the plaintiff's Complaint and/or the cause of action fails to state a cause of action against the answering defendant.

(3)      That if any liability is found as against this answering defendant, then said liability will constitute 50% or less of the total liability assigned to all persons liable and, as such, the liability of this answering defendant to plaintiff for non-economic loss shall be limited and shall not exceed this answering defendant's equitable share, as provided in FRCP.

**5.  <u>JURY/NON-JURY TRIAL & ESTIMATE OF TIME</u>:**

This case is to be tried before a jury before the Honorable Judge Joanna Seybert.  Plaintiff estimates that the presentation of her case will take approximately 14 days, exclusive of jury selection.

Defendants LaRosa and Hamilton estimate the presentation of their case will take approximately 5 to 7 days.

**Medical Malpractice Case:** The defendants estimate that the presentation of the defense of the medical malpractice cause of action and wrongful death will take approximately 3 to 4 additional days in court.

**6.  <u>MAGISTRATE/NON-MAGISTRATE</u>:**

This case shall not be tried before a Magistrate Judge.

**7.  <u>STIPULATED FACTS</u>:**

**Plaintiff's Proposed Stipulated Facts**:

1.  Plaintiff Tawana Scott, as Administratrix of the Estate of Kevin Turner, filed a Complaint in the United States District Court, Eastern District of New York, on December 28, 2012, (the "Complaint"), alleging various causes of action stemming from the April 6, 2010, arrest of Mr. Turner, including a Section 1983 violation (false arrest, excessive use of force, abuse of process), violations of Sections 1981, 1985 and 1986, and pendant state claims for battery, wrongful death, and negligence.

2.  Defendant Hamilton filed an Answer to the Complaint on March 29, 2013.

3.  Defendant LaRosa filed an Answer to the Complaint on March 29, 2013.

4.  Kevin Turner was born on August 31, 1990.

5.  On or about April 6, 2010, the decedent had two children: K'Dreese Turner born June 3, 2008 and Ke'Ionna Hudson born January 18, 2009.  K'Dreese's mother is T'Keyah Bush.  Ke'Ionna's mother is TT Hudson.

6.  Kevin Turner was hospitalized at Brookhaven Memorial Hospital and subsequently at Stony Brook University Hospital.

7.  Mr. Turner was also treated at John J. Foley Skilled Nursing Facility and St. Charles Rehabilitation.

8.  Kevin Turner died on January 2, 2011.

9.  A Suffolk County Medical Examiner determined the death of Kevin Turner to be a Homicide. **The officer defendant's object.**

10. On or about the early morning of April 6, 2010, Officer Jason LaRosa of the Suffolk County Police Department was on patrol in marked Unit 514, partnered with SCPD

Officer Michael Richardsen. They were patrolling North Bellport, Bellport, and East Patchogue.

11.     After pulling over the vehicle, Officers LaRosa and Richardsen exited their vehicle, and as they approached the black KIA, it drove off at a high rate of speed. They got back into their vehicle and pursued the KIA During the pursuit, the KIA drove erratically, failed to stop at several stop signs, traveled into oncoming traffic, hit debris, swerved into the opposite bound lane in the direction of Unit 515.

12.     At the same time, SCPD Officer Kenneth Hamilton was patrolling solo in Unit 515 when he heard a call over the radio indicating the pursuit of a vehicle suspected of DWI on Station Road. He joined the pursuit.

13.     The driver of the black KIA, Kevin Turner, exited the vehicle and fled on foot.

14.     This commenced a foot pursuit with Officer LaRosa chasing Turner though residential yards.

15.     When Officer Hamilton pulled up to the scene, Turner had already fled the vehicle. He joined the foot pursuit.

16.     Officer Hamilton entered a residential yard and discovered Turner in the back of 530 Agamemnon Avenue, standing next to a tree, a few feet into the wood line, below a chain link fence about four feet high.

17.     Officer Hamilton was transported by ambulance to Stony Brook Hospital.

18.     As a result of the arrest on April 6, 2010, -Turner was charged with menacing, resisting arrest, reckless endangerment, fleeing police in a motor vehicle, and various other motor vehicle infractions which were all subsequently dismissed and did not result in

convictions. The decedent was never charged with assault. **The officer defendant's object.**

19.   Officers responding to the scene of the arrest were asked to perform an evidence search for a gun with the assistance of a K9 unit. Within seconds, the K9 recovered a knife and Officer Michael Cassidy gave the knife to Sergeant John Durkin. **The officer defendant's object.**

20.   Officer Frank Munsch was handed the knife, and he gave it to Officer Richardsen. The knife was improperly considered prisoner property and not evidence and was subsequently inadvertently lost when left on a police car at the scene. **The officer defendant's object.**

21.   Specifically, Officer Richardsen put the knife on the hood of the Unit 514 police vehicle, and after the crime scene finished processing the crash scene, he drove the car back to the 5th Precinct. Officer Richardsen recalled that while driving, something fell off the hood, possibly the knife he had placed there. **The officer defendant's object.**

22.   No criminal charges were brought against the officers for their actions in taking Turner into custody. **The officer defendant's object.**

23.   Lieutenant Pirone completed an internal affairs investigation of the incident and finished a case report on June 24, 2016, six years after the incident. **The officer defendant's object.**

24.   In April of 2010, the Suffolk County Police Department Rules and Procedures included a section which prohibited a member of the service from reporting for duty or being on duty while their ability to perform their duty is impaired by the use of an intoxicant. **The officer defendant's object.**

25. In April of 2010, the Suffolk County Police Department Rules and Procedures included a section which prohibited a member of the service from possessing or using, consuming, or otherwise ingesting any unauthorized drug or steroid whether on duty or off duty. **The officer defendant's object.**

**Medical Malpractice:**

26. On April 6, 2010, an ambulance arrived on scene and found the decedent, KEVIN TURNER, in police custody, on the ground, extremely combative, spitting and non-compliant with maxillary facial trauma.

27. Due to MR. TURNER'S combative behavior and spitting, the patient was unable to be properly assessed by the ambulance personnel.

28. Listed in the Ambulance records of the patient under "Mechanism of Injury" it states, "unarmed assault."

29. At 00:59 on April 6, 2010, the patient arrived via ambulance to BROOKHAVEN MEMORIAL HOSPITAL MEDICAL CENTER.

30. DR. MACLEOD is a physician licensed to practice medicine in the State of New York since 1988.

31. DR. MACLEOD began treating patients at BROOKHAVEN MEMORIAL HOSPITAL MEDICAL CENTER's emergency room in January of 1993, and continued to do so as of November 17, 2014, the date of DR. MACLEOD's deposition.

32. During this time, DR. MACLEOD was involved in patient care which included, but was not limited to, motor vehicle accidents and assaults.

33. Additionally, from 1993 through April of 2010, while working in the Emergency Department at BROOKHAVEN MEMORIAL HOSPITAL MEDICAL CENTER, DR.

MACLEOD treated patients with head trauma who also had suffered cerebral hemorrhages or subdural hematomas.

34.   DR. MCLEOD provided medical care and treatment to KEVIN TURNER at BROOKHAVEN MEMORIAL HOSPITAL MEDICAL CENTER on April 6, 2010.

35.   During DR. MACLEOD's assessment of the patient, DR. MACLEOD utilized a three-page document entitled "Brookhaven Memorial Hospital Medical Center Emergency Physician Record Alleged Assault."

36.   The three page "Brookhaven Memorial Hospital Medical Center Emergency Physician Record Alleged Assault" was utilized in the regular practice of BROOKHAVEN MEMORIAL HOSPITAL MEDICAL CENTER in 2010 for assessing patients who came into the emergency room.

37.   More specifically, the three page "Brookhaven Memorial Hospital Medical Center Emergency Physician Record Alleged Assault" document was used for assessing patients that were victims of alleged assaults.

38.   All of the handwriting on the three page "Brookhaven Memorial Hospital Medical Center Emergency Physician Record Alleged Assault" is DR. MACLEOD's.

39.   The patient listed in the BROOKHAVEN MEMORIAL HOSPITAL MEDICAL CENTER chart as "DOE 99, JOHN" was KEVIN TURNER.

40.   On the Emergency Physician Record under the title "LOCATION OF PAIN/INJURIES", DR. MACLEOD circled the word "face" and then placed a line above that to the word "swelling".

41.   On the Emergency Physician Record under the title "ROS", DR. MACLEOD circled "skin lacerations".

14

42.   On the Emergency Physician Record under the title "PAST HX", DR. MACLEOD wrote "UNK", which is an abbreviation for unknown.

43.   DR. MACLEOD put "UNK" because DR. MACLEOD did not know the patient's past medical history.

44.   By placing a backslash through "no evidence of trauma" on the Emergency Physician Record, this indicated that there was evidence of head trauma.

45.   DR. MACLEOD made markings on the pre-printed face diagram located on the Emergency Room Physician Record.

46.   These markings consisted of a dot by the patient's right eye with the abbreviation "LAC" for laceration and a circle drawn by DR. MACLEOD by the left cheek of the patient with the abbreviation "s/t" which stands for swelling and tenderness.

47.   These markings on the face diagram indicated trauma to the patient's face.

48.   Upon physical examination, DR. MACLEOD also found that the patient had an oral injury which consisted of a laceration to his upper lip which DR. MACLEOD noted in the Emergency Physician Record under the heading "ENT".

49.   DR. MACLEOD examined the patient's skin and noticed an abrasion on the patient's left arm.

50.   DR. MACLEOD documented this abrasion by placing an "A" for abrasion in the patient's medical chart on the left elbow of the pre-printed diagram of a human body in the Emergency Physician Record.

51.   DR. MACLEOD examined the patient's extremities and upon examination found evidence of trauma.

52.  DR. MACLEOD ordered a CT scan of the patient's head because she was concerned that the patient had a head injury due to the fact that the patient had swelling and tenderness of his face and that there was a complaint of an alleged assault.

53.  Following DR. MACLEOD's assessment of the patient, DR. MACLEOD ordered BMP (blood test) to look at different blood chemistries, CBC/Diff (which is a blood count with differential to show the white blood count cells, hemoglobin and hematocrit), a urinalysis in order to get a urine toxicology screen, an ETOH (alcohol) test for the alcohol in the patient's blood, type and screen blood test, and a portable x-ray.

54.  The orders for the CT scans, blood test, urine toxicology screen, ETOH and chest x-ray were placed by DR. MACLEOD on the order sheet timed at 1:12 a.m.

55.  Sedation was ordered by DR. MACLEOD at 1:10 a.m. and consisted of Droperidol 5 mg and Ativan 2 mg.

56.  These orders were administered by Nurse Matutino at 1:10 a.m.

57.  Nurse Matutino first became licensed as a Registered Nurse in the State of New York in 2007.

58.  Nurse Matutino has been a nurse at the emergency room at BROOKHAVEN MEMORIAL MEDICAL CENTER for over nine years as of the date of his deposition on April 14, 2015.

59.  Nurse Matutino provided nursing care and treatment to KEVIN TURNER at Brookhaven Memorial Hospital Medical Center on April 6, 2010.

60.  During Nurse Matutino's assessment of the patient, Nurse Matutino filled out the "Emergency Department Nursing Assessment" document.

61.     The Emergency Department Nursing Assessment document is the document that was used in the regular and ordinary practice of BROOKHAVEN MEMORIAL MEDICAL CENTER during the time that Nurse Matutino treated patients in the emergency room up to and including April, 2010.

62.     The Emergency Department Nursing Assessment document is the nursing assessment for patients that come into the emergency room.

63.     Nurse Matutino documented the Emergency Department Nursing Assessment regarding the findings of his initial assessment of the patient at 1:01 a.m.

64.     If additional information was obtained after the initial assessment, Nurse Matutino would then add that information onto the Emergency Department Nursing Assessment.

65.     At 1:01 a.m. Nurse Matutino performed a neurological assessment of the patient and documented the assessment in the Emergency Department Nursing Assessment form.

66.     During Nurse Matutino's initial assessment and examination of the patient, Nurse Matutino noted that the patient had left facial swelling.

67.     During Nurse Matutino's initial assessment, he observed and noted on the Emergency Department Nursing Assessment document that the patient had a Foley catheter in place and was voiding amber urine.

68.     Nurse Matutino used a urine dip to determine if the patient had blood in his urine, he documented "urine dip (+++) blood" meaning that there was a lot of blood in Mr. Turner's urine at 1:01 a.m.

69.     During this initial assessment, Nurse Matutino also examined the patient's skin and noted a right facial laceration of 1 cm, left facial swelling, and an upper lip laceration with bleeding in the patient's mouth.

70.   Nurse Matutino also noted that an IV was placed, and that blood was drawn and sent to the lab.

71.   Nurse Matutino also performed a Glasgow Coma Scale which assesses the level of consciousness of the patient.

72.   The toxicology report from the blood drawn indicated that the patient was positive for phencyclidine (PCP) and THC.

73.   At 1:15 a.m., Nurse Matutino took the patient's vital signs which showed a blood pressure of 164/73 and heart rate of 55. No respiration rate was documented at this time. Nurse Matutino also documented 5/10 pain.

74.   At 1:25 a.m., a portable x-ray was taken of the patient's chest which was normal.

75.   At 1:35 a.m., Nurse Matutino drafted a note indicating that the patient's vital signs were checked and recorded and that they were to continue to monitor the patient.

76.   The patient's Glasgow Coma Scale was again calculated by Nurse Matutino at 1:35 a.m. to be an 8-9.

77.   Nurse Matutino's note timed at 1:35 a.m. indicated that Nurse Matutino took the patient to the CT scan.

78.   Nurse Matutino authored a note timed at 1:45 a.m. which indicated that the patient was brought back from the CT scan to the Trauma Room and was to be closely monitored.

79.   At 1:45 a.m., Nurse Matutino took and recorded the patient's vital signs. which showed a blood pressure of 154/59, a heart rate of 53, respirations of 24, and 7/10 pain.

80.    DR. MACLEOD received the results of the patient's CT scan of the head which revealed a right hemispheric subdural hematoma measuring up to 1 cm thick with local mass effect

with approximately 1 cm of right to left midline shift a subdural hematoma with right shift from a radiologist prior to the final CT scan reports.

81. DR. MACLEOD authored a note timed at 1:50 a.m. which states "CT head in CT – R subdural with shift. Call to Neurosurgery".

82. DR. MACLEOD's note timed at 1:50 a.m. indicates that the CT was performed and that the findings were that the patient had a right subdural hematoma with shift.

83. DR. MACLEOD's note timed at 1:50 a.m. also states a call to Neurosurgery.

84. The CT scan final reports of the patient's face and head from Virtual Radiology and the "Final Report", of the CT scan of the face and head timed at 1:55 a.m. both reported that the patient had a subdural hematoma with right shift and a right nasal bone fracture. The CT scan of the face timed at 1:55 a.m. showed a right sided nasal bone fracture, extensive facial soft tissue swelling, more prominent on the left than the right, and mucosal thickening within the maxillary and ethmoid sinus. The CT scan of the head timed at 1:55 a.m. showed a right frontotemporal parietal acute subdural hematoma causing significant mass effect upon the underlying brain parenchyma resulting in right to left **subfalcine** herniation and early uncal herniation. The head CT also showed possible early obstructive hydrocephalus with dilation of the left temporal horn.

85. When DR. MACLEOD wrote in the note timed at 1:50 a.m. "call to Neurosurgery", DR. MACLEOD was referring to the neurosurgeon that was on call for BROOKHAVEN's emergency room. As such, the Unit Secretary called the on-call neurosurgeon.

86. DR. MACLEOD discussed the patient's condition with the surgeon on call for trauma.

87. DR. MACLEOD's note timed at 2:00 a.m. states "Discussed with Dr. Sheth, scheduled for OR at Southside tonight. Unable to come for evaluation of patient. Request transfer to Stony Brook.

88. DR. MACLEOD's note timed at 2:00 p.m. indicates that DR. MACLEOD discussed this case with Dr. Sheth and that Dr. Sheth was scheduled for the operating room at Southside and was unable to come to BROOKHAVEN MEMORIAL HOSPITAL MEDICAL CENTER to evaluate the patient.

89. When DR. MACLEOD spoke with Dr. Sheth, DR. MACLEOD was aware that the CT scan revealed that the patient had a subdural hematoma.

90. DR. MACLEOD wanted the patient to be evaluated by Neurosurgery due to the fact that a patient with a subdural hematoma needs a neurosurgical evaluation.

91. In a note timed at 2:05 a.m., DR. MACLEOD indicates that she discussed the patient with Dr. Garra, the ED Attending at Stony Brook Hospital.

92. DR. MACLEOD's note timed at 2:20 a.m. states that DR. MACLEOD re-discussed the patient with Stony Brook, and "Dr. Geller to accept".

93. During DR. MACLEOD's conversation with Neurosurgery, DR. MACLEOD was instructed not to administer steroids or Celebrex to the patient.

94. At 2:20 a.m., DR. MACLEOD prescribed Tetanus and Ancef which was administered to the patient.

95. DR. MACLEOD filled out a two-page Authorization for Transfer sheet for the patient's transfer to Stony Brook University Hospital.

96. The Authorization for Transfer sheet contains all of DR. MACLEOD's handwriting except for the witness' signature on page 2.

97.    Nurse Matutino witnessed DR. MACLEOD fill out and sign the Authorization for Transfer sheet regarding the patient's transfer.

98.    On the Authorization for Transfer sheet, DR. MACLEOD wrote that the receiving facility was Stony Brook University Hospital and that the name of the individuals authorizing transfer were Dr. Geller and Dr. Garra.

99.    DR. MACLEOD noted on the Emergency Physician Record under the title of "Progress", "CT of the head with subdural. See progress note. Patient was transferred to Stony Brook, Dr. Geller".

100.   At 2:45 a.m., R.N. Matutino performed an examination of the patient's eyes and noted the dilation of the right eye to be 5 plus and the left eye to be 3 plus, and, at 2:56 a.m., he took the patient's vital signs.

101.   At 3:20 a.m. R.N. Matutino's note indicated that Stony Brook staff was at the patient's bedside.

102.   DR. MACLEOD's 3:30 a.m. note, indicated the patient was intubated and had equal breath sounds bilaterally.

103.   An x-ray was performed post-intubation and revealed that the ET tube was in place with no pneumothorax.

104.   At 3:40 a.m., Nurse Matutino's note indicated the patient was still moving and there was an order to give Ativan 2mg IV push.

105.   At 3:45 a.m., Nurse Matutino gave a report regarding the patient to the staff at Stony Brook University Hospital, which was both verbal and written.

106.    R.N. Matutino also provided the Stony Brook University Hospital staff with all of the emergency room documentation including the patient's Emergency Record from BROOKHAVEN MEMORIAL HOSPITAL MEDICAL CENTER.

107.    At 4:00 a.m. the patient had gone to Stony Brook with the team and had left the Trauma Room at BROOKHAVEN MEMORIAL HOSPITAL MEDICAL CENTER.

108.    DR. MACLEOD's clinical impression was alleged assault and that the plaintiff had a subdural hematoma and a nasal fracture.

109.    The Emergency Medical Services Critical Care Transport Team Transport Record from Stony Brook University Hospital states that "PT remained without change throughout transport. No change in neuro status."

110.    The patient presented to the Emergency Department at Stony Brook at 4:33 a.m.

111.    A CT of the head was ordered at 4:45 a.m. and completed at 5:37 a.m.

112.    The anesthesia records from Stony Brook indicate that the anesthesia was started at 5:37 a.m. for the surgery to evacuate KEVIN TURNER's subdural hematoma.

## 8. <u>WITNESSES</u>:

<u>Plaintiff:</u>

Plaintiff anticipates calling the below listed witnesses at trial, not necessarily in the below-listed order, to give in-person testimony:

1.    <u>Tawana Scott</u> – Ms. Scott will give general testimony regarding her son Kevin as well as her interaction with the Suffolk County Police Department and medical providers. She will also testify concerning the relationship that Kevin enjoyed with his son and daughter, the type of person Kevin was, and his future goals. Ms. Scott will testify

regarding pain and suffering experienced by the decedent from the time of April 6, 2010, until his death.

2.   <u>K'Dreese DeShaun Turner</u> – It is anticipated that K'Dreese Turner will testify regarding his relationship with his father, his current status, any recollection of interaction with his father, and the effects of the loss of his father on him.

3.   <u>Ke'Ionna Hudson</u> - It is anticipated that Ke'Ionna Hudson will testify regarding her current status, any recollection of interaction with her father, and the effects of the loss of her father on her.

4.   <u>T'Keyah Bush</u> – The mother of K'Dreese Turner may testify regarding the interaction of Kevin Turner with his child and the effect of the loss of his father on him.

5.   <u>Pastor Devon Daniel</u> – It is anticipated that Pastor Daniel will testify regarding his interaction with Suffolk County Police Department Personnel in this matter and his observations of the decedent during the course of his hospitalization and medical treatment from April 6, 2010, until the date of his death, as well as any information regarding the decedent's interaction with his children, and the type of person the decedent was.

6.   <u>Leon Mann</u> – Will testify concerning his knowledge of the vehicle pursuit on or about April 6, 2010.  It is believed he will testify generally regarding his recollection as to the vehicle pursuit, and the events that took place thereafter.

7.   <u>Police Officer Jason LaRosa</u> – A Defendant, who it is believed will testify regarding his interaction with Turner, observations of Kenneth Hamilton on or about April 6, 2010, and communications with Kenneth Hamilton and other Suffolk County Police Department personnel.

23

8.     <u>Kenneth Hamilton</u> – A Defendant who is believed will testify regarding his interaction with Kevin Turner, observations of P.O. LaRosa on April 6, 2010, and communications with P.O. LaRosa and other Suffolk County Police Department personnel.

9.     <u>Sergeant John Durkin</u> – Regarding his recollection regarding the search conducted by the K-9 unit for a knife both on April 6, 2010, and thereafter.

10.    <u>Police Officer Michael Cassidy</u> – Concerning his search conducted with a K-9 for a knife claimed to exist by Defendant Hamilton on or about April 6, 2010, and thereafter.

11.    <u>Police Officer Michael Richardsen</u> – Concerning his claimed receipt of a knife on April 6, 2010, and any chain of custody issues relative to a knife.

12.    <u>Lieutenant William Blaschuk</u> – Regarding his knowledge of relevant time off taken by the Defendant Hamilton during the time period from October 15, 2008, through November 8, 2008.  If lieutenant Blaschuk is available, it is anticipated that he would testify in person, if not, Plaintiff intends to rely upon his deposition testimony. Lieutenant Blaschuk may be called as a rebuttal witness by Plaintiff.

13.    <u>Lieutenant Michael Pirone</u> – It is anticipated that Lieutenant Pirone may be called by Plaintiff in their case in chief on the issue of Officer Hamilton having an affirmative duty to advise medical personnel that a part of Turner's head injury may have come from the fact that he hit him in the head with a flashlight, as contained at Page 79 of Lines 3-8, 9-14 of the Pirone Deposition of January 18, 2017.  Plaintiff reserves the right to utilize said Deposition Transcript for an impeachment relative to any testimony or evidence offered by the Defendants.

14.    <u>Dr. Hargovind DeWal</u> Long Island Spine Specialists P.C. or "custodian of the records".

15.     <u>Dr. Arjang Abbasi, D.O.</u> Long Island Spine Specialists P.C. or "custodian of the records".

16.     <u>Joseph A. Pollini</u> – Will testify as an expert in accordance with the previously disclosed Expert Witness Disclosure regarding Excess Force and Police Procedures relative to the Excess Force Claims.

17.     <u>Dr. Stephen de Roux, M.D.</u> – Will testify as an expert in accordance with the previously disclosed Expert Witness Disclosure concerning the Mechanics of Injury relative to the injuries suffered by the decedent.

18.     <u>Dr. Lawrence Shields, M.D.</u> – Will testify as an expert regarding medical treatment received by the decedent at Brookhaven Memorial Hospital, Stony Brook University Hospital, John J. Foley Skilled Nursing Facility, and St. Charles Rehabilitation.  Dr. Shields will testify as to departures from the standard of care by the defendants Brookhaven Memorial Hospital and Dr. Margaret MacLeod and the causal relationship of such departures to decedent's injuries and death. Further, Dr. Shields will testify in accordance with his previously disclosed Expert Witness Disclosure.

19.     <u>Dr. Margaret MacLeod</u> – A defendant, who it is believed will testify regarding the care and treatment rendered to Mr. Turner after he presented to Brookhaven Memorial Hospital on April 6, 2010, after his altercation with the police. It is expected that Dr. MacLeod will testify that she ordered various testing for Mr. Turner, including a head CT, which identified a subdural hematoma.

20.     <u>London Casiano, RN</u> – Concerning her observations and medical documentation of Mr. Turner upon his arrival to Brookhaven Memorial Hospital on April 6, 2010, after his altercation with the police.

21.  Leo Matutino, RN – Concerning his observations and medical documentation of Mr. Turner in the emergency room at Brookhaven Memorial Hospital on April 6, 2010, after his altercation with the police. It is anticipated that Nurse Matutino will testify that Mr. Turner presented to the hospital with face and lip lacerations, facial swelling, unequal pupils, and blood in his urine. Additionally, it is anticipated that Nurse Matutino will testify regarding Mr. Turner's Glasgow Coma Scale and the administration of medications to Mr. Turner.

22.  Dr. Robert Galler – Concerning the state of Mr. Turner after he was transferred to Stony Brook University Hospital from Brookhaven Memorial Hospital. It is anticipated that Dr. Galler will testify that Mr. Turner stayed at Brookhaven Memorial Hospital inordinately long without neurosurgical care and within fifteen minutes of arriving to Stony Brook University Hospital his brain was rescanned, and he was taken to the operating room for a craniotomy and evacuation of his subdural hematoma.

23.  Rishi Sheth, MD – Concerning neurosurgical coverage and practice at Brookhaven Memorial Hospital on April 6, 2010.

24.  Magdy Shady, MD – Concerning neurosurgical coverage and practice at Brookhaven Memorial Hospital on April 6, 2010.

Plaintiff reserves her rights, depending upon the testimony offered to introduce necessary rebuttal testimony and evidence at the time of trial.

**Defendants:**

**Defendant Police Officer Jason LaRosa and Police Officer Kenneth Hamilton anticipate calling the following witnesses at trial:**

1.  Police Officer Jason LaRosa: A defendant in this action who will testify to his interaction with Kevin Turner on April 6, 2010, and will testify to his attempts to stop

the Turner vehicle that was driving in a reckless manner and fled after being stopped by Officers LaRosa and Richardsen.  Further Officer LaRosa will testify to the accident the Turner vehicle was involved in and the fact that Mr. Turner and his passenger Leon Mann fled on foot after the accident.  Officer LaRosa will testify that he chased after the Kevin Turner who was fleeing from the Officers and will describe the violent and physical altercation that Officer LaRosa and Officer Hamilton had with Mr. Turner who during the struggle violently resisted arrest and attempted to grab Officer LaRosa's weapon.

2.  Police Officer Kenneth Hamilton:    A defendant in this action who will testify to his interaction with Kevin Turner on April 6, 2010, and will testify to his attempts to stop the Turner vehicle that was driving in a reckless manner and caused the Hamilton vehicle to go off the road and hit a vehicle.  Officer Hamilton will testify that he chased after the Kevin Turner who was fleeing from the Officers and will describe the violent and physical altercation that Officer LaRosa and Officer Hamilton had with Mr. Turner who during the struggle violently resisted arrest and attempted to grab Officer LaRosa's weapon.

3.  Police Officer Michael Richardsen:    Officer Richardsen who was partnered with Officer LaRosa on April 6, 2010, will testify    to their attempts to stop the Turner vehicle that was driving in a reckless manner and fled after being stopped by Officers LaRosa and Richardsen.  Further Officer Richardsen will testify to the accident the Turner vehicle was involved in and the fact that Mr. Turner and his passenger Leon Mann fled on foot after the accident.  He will further testify to his involvement in the police investigation and his going to Stony Brook Hospital.

4.  Police Officer Frank Munch:   Will testify to his involvement with Keven Turner on April 6, 2010, including his observation of Mr. Turner at the scene of the arrest and at Stony Brook Hospital.  He will also testify to his involvement in the post arrest investigation.

5.  Police Officer David Henderson:   Will testify to his involvement with Keven Turner on April 6, 2010 including his observation of Mr. Turner at Stony Brook Hospital.  He will also testify to his involvement in the post arrest investigation.

6.  Police Officer Kevin Middletown:   Will testify to his involvement with Keven Turner on April 6, 2010, including his observation of Mr. Turner at the scene of the arrest and at Stony Brook Hospital.  He will also testify to his involvement in the post arrest investigation and the need to restrain Mr. Turner with leg restraints as he was combative and kicking the ambulance personnel.

7.  Police Officer William Boyd:   Will testify to his involvement with Keven Turner on April 6, 2010, including his observation of Mr. Turner at the scene of the arrest and at Stony Brook Hospital.  He will also testify to his involvement in the post arrest investigation.

8.  Police Officer Michael Cassidy:   Will testify to his involvement with Keven Turner on April 6, 2010, including his canine search of the area were Mr. Turner fled and violently struggled with Officers Hamilton and LaRosa and his recover of a knife.  He will also testify to his involvement in the post arrest investigation.

9.  Sgt. Michael Guerrisi:     Will testify to his involvement with Keven Turner on April 6, 2010 including his observation of Mr. Turner at the scene of the arrest and and the need to restrain Mr. Turner with leg restraints as he was combative and kicking the

ambulance personnel.   He will also testify to his involvement in the post arrest investigation.

10. Detective Robert Chase:   Will testify to the investigation he conducted surrounding the circumstances of the arrest of Kevin Turner on April 6, 2010.

11.  Leon Mann:  A friend of Kevin Turner and passenger in the Turner vehicle on April 6, 2010, will testify to his relationship with Mr. Turner, his use of drugs on April 6, 2010, as well as the fact that Kevin Turner fled the police after being stopped and that he also ran from the police on foot.  Additionally, he will testify to his conversations with Kevin Turner on April 6, 2010.

12. Gregory Hill: Ambulance personnel who was called to scene of the arrest and will testify to his observations of Kevin Turner, Police Officer Hamilton, and Police Officer LaRosa at the scene.  He will testify to Mr. Turners combative nature, the need for leg restraints and the treatment he received.

13. Jamie Johnson:  Ambulance personnel who was called to scene of the arrest and will testify to his observations of Kevin Turner, Police Officer Hamilton, and Police Officer LaRosa at the scene.  He will testify to Mr. Turners combative nature, the need for leg restraints and the treatment he received.

14. Dr. Maura DeJoseph:  Suffolk County Deputy Medical Examiner who conducted the Turner autopsy.

15.  Dr. Kenneth R. Lidonnici: Director of the Department of Laboratories for Brookhaven Memorial Hospital will testify to the collection of blood and urine samples from Kevin Turner on April 6, 2010, at Brookhaven Memorial Hospital and will discuss the results

of the toxicology, urine and chemistry results including the presence of Phencyclidine (PCP) and THC. **Plaintiff's object.**

16. Lori Arendt: Forensic Scientist III will testify to her involvement in performing toxicology testing with regard to samples submitted for Kevin Turner under laboratory No. D2010-00162 and the results of the tests. **Plaintiff's object.**

17. Kristen Ferraro: Forensic Scientist I will testify to her involvement in performing toxicology testing with regard to samples submitted for Kevin Turner under laboratory No. D2010-00162 and the results of the tests. **Plaintiff's object.**

18. Charles S. Wagner:  Suffolk County Crime Laboratory Analyst will testify to his involvement in performing serology testing with regard to evidence submitted for analysis under laboratory No. 10-1371 and the results of the tests. **Plaintiff's object.**

19. Helen Lee-Wyss:  Suffolk County Crime Laboratory Analyst will testify to her involvement in performing DNA-STR testing with regard to evidence submitted for analysis under laboratory No. 10-1371 and the results of the tests. **Plaintiff's object.**

20. Dr. Robert Galler – Concerning the state of Mr. Turner after he was transferred to Stony Brook University Hospital from Brookhaven Memorial Hospital. It is anticipated that Dr. Galler will testify that Mr. Turner stayed at Brookhaven Memorial Hospital inordinately long without neurosurgical care and within fifteen minutes of arriving to Stony Brook University Hospital his brain was rescanned, and he was taken to the operating room for a craniotomy and evacuation of his subdural hematoma.

21. Joseph J. Blattler: Mr. Blaettler will testify as to his opinions, within a reasonable degree of professional certainty, regarding the actions and procedures employed by members of the Suffolk County Police Department including but not limited to Police

Officer Jason La Rosa and Police Officer Kenneth Hamilton and the County of

Suffolk in accordance with his previously disclosed Expert Witness Disclosure.

The Police Officer Defendants may also offer the relevant admissible testimony of other

individuals identified in the Suffolk Police Department paperwork, subject to the Court's

permission. Said individuals will testify as to their observations, their involvement in the

incident as alleged by the Plaintiff, conversations had with Plaintiff and/or others, and

their involvement in the investigation of the Plaintiff's allegations.

The Police Officer Defendants further reserve their right to use such additional and

unidentified witnesses for impeachment purposes and/or as may be warranted in response

to the plaintiff's direct case as the need arises. See FRCP Rule 26(d)(3).

**Defendants Brookhaven and MacLeod anticipate calling the below listed witnesses at trial to give in person testimony:**

1.  <u>Dr. Margaret MacLeod</u> – A defendant in this action, who it is believed will testify

    regarding the care and treatment that she rendered to Mr. Turner on April 6, 2010 upon

    his presentation to Brookhaven Memorial Hospital Medical Center.  Dr. MacLeod is

    expected to testify, among other things, that she timely and appropriately ordered

    various tests of Mr. Turner including but not limited to a CT scan of his head which

    timely and appropriately diagnosed Mr. Turner's subdural hematoma.

2.  <u>Nurse Leon Matutino</u> – It is anticipated, that Nurse Matutino will testify regarding the

    nursing care and treatment that he provided to Mr. Turner during this emergency room

presentation of April 6, 2010 as well as any physical examinations and/or findings and/or observations that Nurse Matutino made during this care and treatment.

3.   <u>Dr. Gregory DiGiacinto</u> – Will testify as an expert in regards to the medical treatment provided to Mr. Turner at Brookhaven Memorial Hospital Medical Center, Stony Brook University Hospital, Jay J. Foley Skilled Nursing Facility, St. Charles Rehabilitation.  Dr. DiGiacinto is a physician licensed to practice medicine in the State of New York who practices as a neurosurgeon. Dr. DiGiacinto is trained in the diagnoses and treatment of diseases involving the brain, the interpretation of CT scans of the brain, as well as surgical treatment of neurological injuries.  Dr. DiGiacinto will testify regarding the good and accepted medical care provided by the defendants, Brookhaven Memorial Hospital Medical Center and Dr. MacLeod to Mr. Turner and, that nothing that the defendants, Brookhaven Memorial Hospital Medical Center, its staff and Dr. MacLeod did or did not do caused or contributed to the cause of the injuries and death of Mr. Turner.  Further, Dr. DiGiacinto will testify in accordance with his previously exchanged expert witness disclosure.

4.   <u>Gregory Mazarin, M.D.</u> – is expected to testify as an expert witness regarding the medical care and treatment received by Mr. Turner at Brookhaven Memorial Hospital Medical Center, Stony Brook University Hospital, John J. Foley Skilled Nursing Facility, and St. Charles Rehabilitation.   Dr. Mazarin is licensed to practice medicine in the State of New York and is board certified in Emergency Medicine.  Dr. Mazarin is expected to testified in regards to the good and accepted medical treatment that was provided to Mr. Turner at Brookhaven Memorial Hospital on April 6, 2010.  Further, Dr. Mazarin will testify that the treatment rendered to Mr. Turner at Brookhaven

Memorial Hospital did not cause or contribute to the cause of the plaintiff's injuries and death.  Lastly, Dr. Mazarin will testify in accordance with his previously exchanged expert witness disclosure.

5. Defendants anticipate calling a witness to lay a foundation for the introduction of the Patient Transfer Agreement between BROOKHAVEN MEMORIAL HOSPITAL MEDICAL CENTER and Stony Brook University Hospital. (Defendants' Exhibit "E"). The witnesses name will be supplied by the defendant Hospital within 30 days.

The Defendants reserve the right, depending on the testimony offered to introduce necessary rebuttal testimony and evidence at the time of trial.

**9. DEPOSITION TESTIMONY TO BE OFFERED**:

Plaintiff reserves the right to utilize all deposition transcripts for impeachment or rehabilitation purposes throughout the trial.  Further, Plaintiff reserves the right to utilize deposition transcripts if witnesses are not available.

**Plaintiff**:

| No. | Witness | Objection |
|-----|---------|-----------|
| 1. | Police Officer Jason LaRosa | Defendant objects to the use of PO Jason LaRosa's deposition transcript as he will testify at trial. |
| 2. | Kenneth Hamilton | Defendant objects to the use of PO Kenneth Hamilton's deposition transcript as he will testify at trial. |
| 3. | Lieutenant William Blaschuk | Objection as impermissible bolstering and hearsay as Lt. Blaschunk is listed as a witness for plaintiff. |
| 4. | Lieutenant Michael Pirone | Objection as impermissible bolstering and hearsay as Lt. Pirone is listed as a witness for plaintiff |
| 5. | Dr. Margaret MacLeod | Defendant objects to the use of Dr. MacLeod's deposition transcript as Dr. MacLeod is listed as a witness to be called at the time of trial.  The transcript is impermissibly bolstering and contains impermissible hearsay. |

| | | |
|---|---|---|
| | | Notwithstanding the above objection, the defendants further object to the following:<br><br>(A) Page 38, Lines 4-9 under 602 as speculation/gues<br><br>(B) Page 106, Lines 18-25, page 107 Lines 1-4 under 401, 402, 403, as there is no cause of action for informed consent.<br><br>(C) Page 107, lines 16-25, 108-109, lines 1-10 under 602, 401, 402, 403 lack of foundation and to the form of the question.<br><br>(D) Page 137, Lines 20-25, Page 138, lines 1-3 under 401, 403 and to the form of the question.<br><br>(E) Page 151, Lines 21-25, 152, Lines 1-20 602, 403 speculation.<br><br>(F) Page 160, Lines 23-25 Page 161, Lines 1-9, 403 form of the question.<br><br>(G) Page 175, Lines 14-17, 403 and to the form of the question.<br><br>(H) Page 220, Lines 6-15, relevance 401, 402, 403. Court Decision dated 3/22/22.<br><br>(I) Page 229, Lines 21-25, Page 230-234, Lines 1-14, 401, 402, 403 relevant and the Court's Decision and Order Dated March 22, 2022 Dismissing the EMTALA cause of action.<br><br>The defendant does not object to the utilization of the deposition testimony for impeachment purposes and to refresh the witness' recollection. |
| 6. | Leo Matutino, R.N. | Objection as impermissible bolstering and hearsay as Nurse Matutino is listed as a witness to be called at the time of the trial of this action.<br><br>Notwithstanding the above objection, the defendants further object to the following:<br><br>(A) Page 56, Lines 1-8, 403 form of the question.<br><br>(B) Page 65, Lines 15-20, 403 form of the question. |

|  |  | (C) Page 77, Lines 17-25, 403 form of the question. |
|  |  | (D) Page 79, Lines 11-19, 403 form of the question. |
|  |  | (E) Page 94, Lines 15-21, 403 form of the question calls for conclusion, outside scope of the witness's knowledge and/or expertise. |
|  |  | (F) Page 132, Lines 9-20, 403, Non responsive move to strike. |
|  |  | The defendants do not object to the utilization of the deposition testimony for impeachment purposes and to refresh the witness' recollection. |
| 7. | Dr. Robert Galler | Objection impermissible bolstering to the extent that Dr. Galler is listed as a witness to be called at the time of trial, 801, 802, hearsay, 602 speculation lack of personal knowledge, lack of foundation, 401, 402 relevancy calls for a conclusion, calls for a legal conclusion, probative value versus prejudicial affect 403. The Court's Decision and Order Dated March 22, 2022, Page 73.<br><br>Notwithstanding the above, the defendants further object to the following:<br><br>(A) Page 57-65, Line 20, relevance 401, 402, 403, 602 lack of personal knowledge, lack of foundation, Court's Decision Dated March 22, 2022 Page 73,  calls for legal conclusion, calls for a conclusion, speculation.  The claims regarding EMTALA have been dismissed.<br><br>(B) Page 65 Line 20 to 70, relevance, 401, 402, 403, 602 speculation, lack of personal knowledge, lack of foundation. The witness is testifying generally and had no idea what condition the plaintiff was in upon arrival at Stony Brook. The witness does not know how or when plaintiff's condition presented itself.  Witness providing opinion.<br><br>(C) Page 99, Lines 18-25 – Page 101, Lines 1-5 relevancy 401, 402, 403 there are no such |

| | | claims, see Court's Decision Dated March 22, 2022.  The claims regarding EMTALA have been dismissed. |
| | | The defendants do not object to the utilization of the deposition testimony for impeachment purposes and to refresh the witness' recollection. |

**Deposition testimony to be offered:**

Defendants:

| No. | Witness | Objection |
|---|---|---|
| 1. | Dr. Margaret MacLeod | |
| 2. | Leo Matutino, R.N. | |

Defendants reserve the right to utilize all deposition transcripts for impeachment or rehabilitation purposes including but not limited to refreshing witnesses' recollection throughout the trial of this action.  Further, the defendants reserve the right to utilize deposition transcripts if witnesses are unavailable.

## 10. EXHIBITS:

**Plaintiff:**

| Exhibit Number | Description | Objection |
|---|---|---|
| 1. | Photographs of P.O. LaRosa - SCPD Photos  # 00270417, 00270418, 00270419 | |
| 2. | Photographs of P.O. Kenneth Hamilton - SCPD Photos # 00270423, 00270425, 00270424 | |
| 3. | Photographs of SCPD Car #514 - SCPD Photo # 00270156, 00270155 | |
| 4. | Photograph of SCPD Car #515 - SCPD Photo # 00270172 | |

| | | |
|---|---|---|
| 5. | Photographs of Kia vehicle - SCPD Photos # 00270256, 00270400, 00270398, 00270279<br><br>Bates Numbered 001-004 | |
| 6. | Hamilton's Supplemental Report dated 4/6/10 | |
| 7. | Hamilton's Misdemeanor Information dated 4/6/10 | |
| 8. | Hamilton's 4/6/10 Injured Employee Report PDCS-1008f | |
| 9. | Hamilton's C-2 Employer's Report of Work-Related Injury/Illness for 6/21/09 Accident<br><br>Bates numbered 001-003 | Objection, Rules 401, 402, 403, 801 and 802<br>HIPAA |
| 10. | Hamilton's 6/22/09 Injured Employee Report PDCS-1008f | Objection, Rules 401, 402,403, 801 and 802<br>HIPAA |
| 11. | Hamilton's LI Spine Records dated 7/22/09, 9/9/09, 1/5/10, 2/16/10, 5/10/10, 6/22/10, 4/27/11, 6/6/11, and 12/1/11<br><br>Bates numbered 001-025 | Objection, Rules 401, 402, 403,801 and 802<br>HIPAA |
| 12. | Hamilton's C-3 Employee Claim for 4/6/10 Incident | Objection, Rules 401, 402, 801 and 802 |
| 13. | Hamilton's C-2 Employer's Report of Work-Related Injury/Illness for 4/6/10<br><br>Bates numbered 001-003 | Objection, Rules 401, 402, 801 and 802 |

| 14. | Pursuit Route Report dated 4/13/10 | Objection, Rules 401, 402, 801 and 802 |
|---|---|---|
| 15. | Photo of Kia Vehicle and Car #514 - SCPD Photo # 00270399 (Plaintiff's Marked Ex #2 from 7/24/17 EBT of LaRosa) | Objection, Rules 401, 402, 801 and 802 |
| 16. | Map of Agamemnon Ave. (Plaintiff's Marked Ex #3 from 7/24/17 EBT of P.O. LaRosa) | Objection, Rules 401, 402, 801 and 802 |
| 17. | Agamemnon Ave. Photo of Home - SCPD Photo # 00270012 and Agamemnon Ave. Photo of Rear Yard - SCPD Photo # 00270043 | |
| 18. | Hamilton's Certified Medical Records from Geisinger Marworth Treatment Center<br><br>Bates numbered 001-144 | Objection, Rules 401, 402, 403, 801 and 802 HIPAA |
| 19. | LaRosa's Supplemental Report dated 4/6/10 | |
| 20. | LaRosa's Supplemental Report dated 1/24/14 | |
| 21. | LaRosa's Supplemental Report dated 4/15/14 | |
| 22. | Leon Mann's Statement to Police dated 5/25/10 | Objection, Rules 401, 402, 801 and 802 |

| 23. | Suffolk County Medical Examiner Report of Autopsy<br><br>Bates numbered 001-010 | Objection, Rules 401, 402, 801, 802 |
|---|---|---|
| 24. | Defendant County of Suffolk Response to Plaintiff's Fifth Request for Interrogatories dated 7/2/19<br><br>Bates numbered 001-003 | Objection, Rules 401, 402, 801 and 802 |
| 25. | Turner's Certified Medical Records from Brookhaven Memorial Hospital dated 4/6/10 | |
| 26. | Brookhaven Memorial Hospital Neurosurgery on call sheet for 4/6/10 | Objection 401, 402 relevance, 403, Court's Decision Dated March 22, 2022.  Hearsay 801-802. |
| 27. | Turner's Certified Medical Records from Brookhaven Memorial Hospital dated 11/19/10-1/2/11 | Objection, Rules 401, 402, 801 and 802 |
| 28. | Turner's Certified Medical Records from Stony Brook University Hospital dated 4/6/10-4/28/10 | Objection hearsay 801, 802<br><br>More specifically with regards to Dr. Galler's operative report dated April 6, 2010.  Relevance 401, 402, 403, 602 lack of foundation, lack of personal knowledge, speculation, calls for legal conclusion, calls for a conclusion, hearsay 801-802, Court's decision and Order dated 3/22/22. |
| 29. | Turner's Certified Medical Records from Stony Brook University Hospital dated 5/24/10-5/28/10 | Objection Hearsay 801, 802 |
| 30. | Turner's Certified Medical Records from Stony Brook University Hospital dated 6/7/10-6/11/10 | Objection Hearsay 801, 802 |
| 31. | Turner's Certified Medical Records from Stony Brook University Hospital dated 6/14/10-6/21/10 | Objection Hearsay 801, 802 |

| 32. | Turner's Certified Medical Records from Stony Brook University Hospital dated 7/13/10-7/16/10 | Objection Hearsay 801, 802 |
|---|---|---|
| 33. | Turner's Certified Medical Records from Stony Brook University Hospital dated 7/26/10 | Objection Hearsay 801, 802 |
| 34. | Turner's Certified Medical Records from John J. Foley Skilled Nursing Facility | Objection Hearsay 801, 802 |
| 35. | Turner's Certified Medical Records from St. Charles Hospital and Rehabilitation Center | Objection Hearsay 801, 802 |
| 36. | Marked Exhibits from the 3/21/16 Depositions of P.O. Michael Cassidy and Sergeant John Durkin, inclusive of Photos inclusive of SCPD Photos # 00270012, 00270043, 00270021<br><br>Bates numbered 001-024 | Objection, Rules 401, 402, 801 and 802 |
| 37. | Marked Exhibits from the 1/19/17 Deposition of Detective Robert Chase | Objection, Rules 401, 402, 801 and 802 |
| 38. | Supplemental Report of P.O. Cassidy canine 4/14/10 | Objection, Rules 401, 402, 801 and 802 |
| 39. | Supplemental Report of P.O. Durkin 4/6/10 | Objection, Rules 401, 402, 801 and 802 |
| 40. | Durkin 3 Page Memo dated 1/8/14. | Objection, Rules 401, 402, 801 and 802 |

| 41. | Order # 07-13 Injured Employee Reporting Procedures | Objection, Rules 401, 402, 801 and 802 |
|---|---|---|
| 42. | Tickets dated 4/6/10: AAM6468011, AAM6468033, AAM9542396, AAM6468022, AAM6468070, AAM6468066, AAM6468044, AAM6468055, AAM6468092 and AAM6468081 | |
| 43. | Misdemeanor Information's dated 4/6/10: CC #'s 10-0165212/SPD, 10-0165215/SPD, 10-0164224/SPD, 10-0164149/SPD (2 pages), 10-0164223/SPD | |
| 44. | Supplemental Report of Richardsen 4/6/10 | Objection, Rules 401, 402, 801 and 802 |
| 45. | Supplemental Report of Richardsen 4/28/10 | Objection, Rules 401, 402, 801 and 802 |
| 46. | EBT of P.O. Michael Richardsen Marked Exhibit #7 Interview of 4/21/10 | Objection, Rules 401, 402, 801 and 802 |
| 47. | P.O. Richardsen Memorandum of 1/10/14 | Objection, Rules 401, 402, 801 and 802 |
| 48. | Photographs of Kevin Turner - SCPD Photographs # 00270002, 00270317, 00270318, 00270319, 00270320, 00270321, 00270322, 00270323, 00270324, 00270325, 00270326, 00270327, 00270328, 00270329, 00270330, 00270331, 00270332, 00270333, 00270334, 00270335, 00270336, 00270337, | Objection, relevance, 401, 402 and 403 |

| | | |
|---|---|---|
| | 00270338, 00270339, 00270340, 00270341, 00270342, 00270343, 00270344, 00270345, 00270346, 00270347, 00270348, 00270349, 00270350, 00270351, 00270352, 00270353, 00270354, 00270355, 00270356, 00270357, 00270358, 00270359, 00270360, 00270361, 00270362, 00270363, 00270364, 00270365, 00270366, 00270367, 00270368, 00270369, 00270370, 00270371, 00270372, 00270373, 00270374, 00270375, 00270376, 00270377, 00270378, 00270379, 00270380 | |
| 49. | Photographs of Kevin Turner with his children FB_IMG_1663707088752 FB_IMG_1663707102113 FB_IMG_1663707109048 FB_IMG_1663708822886 FB_IMG_1663709499061 Screenshot_20220920-165316_ Facebook Screenshot_20220920-165354_ Facebook Screenshot_20220920-165413_ Facebook Screenshot_20220920-165422_ Facebook Screenshot_20220920-165427_ Facebook Screenshot_20220920-165442_Facebook Screenshot_20220920-165451_ Facebook Screenshot_20220920-165636_ Facebook Screenshot_20220920-165732_ Facebook Screenshot_20220920-171819_Facebook | Objection, relevance, 401, 402 and 403 |
| 50. | SCPD Dispatch Tape | Objection, Rules 401, 402, 801 and 802 |

| 51. | Hamilton Re-Injury of 10/12/08 Ex "X" to JCB Declaration 2/19/20 | Objection, Rules 401, 402, 403, 801 and 802 HIPAA |
|-----|---|---|
| 52. | Hamilton Attendance/Payroll Record Ex "A" to JCB Declaration 2/19/20 | Objection, Rules 401, 402, 403, 801 and 802 |
| 53. | Police Interview of South County Ambulance Personnel Ex "EE" to JCB Declaration of 2/19/20 | Objection, Rules 401, 402, 801 and 802 |
| 54. | SCPD Vehicle Accident Report and Police Accident Report Ex FF to JCB Declaration of 2/19/20 | Objection, Rules 401, 402, 801 and 802 |
| 55. | Prisoner Activity Log – Ex "GG" to JCB Declaration of 2/19/20 | Objection, Rules 401, 402, 801 and 802 |
| 56. | Hospital Pre-Care Report – Ex "HH" to JCB Declaration of 2/19/20 | Objection, Rules 401, 402, 801 and 802 |
| 57. | Suffolk County Medical Examiner's Supplemental Report dated 1/2/11– Ex "KK" to JCB Declaration 2/19/20. | Objection, Rules 401, 402, 801 and 802 |
| 58. | SUFFOLK COUNTY POLICE RULES AND PROCEDURES, CHAPTER 2: TITLE: GENERAL REGULATIONS, SECTION 11: TITLE: USE OF PHYSICAL FORCE Order Numbers 08-32, 08-42, 08-54 and 08-71 | Objection, Rules 401, 402, 801 and 802 |
| 59. | SUFFOLK COUNTY POLICE RULES AND PROCEDURES, CHAPTER 14: TITLE: EVIDENCE PROCEDURES SECTION 1: TITLE: CRIME SCENE EVIDENCE | Objection, Rules 401, 402, 801 and 802 |

| | | |
|---|---|---|
| | | |
| 60. | Serology Report / Evidence Summited, Supplemental Serology Report / DNA Report | Objection, Rules 401, 402, 801 and 802 |
| 61. | Crime Scene Recover Report 4/6/10 / Evidence Disposition, Crime Scene Recovery Report 4/9/10, Crime Scene Recovery Report 4/8/10 / Disposition of Evidence | Objection, Rules 401, 402, 801 and 802 |
| 62. | Supplemental Report 4/12/10 of P.O. Frank Munsch | Objection, Rules 401, 402, 801 and 802 |
| 63. | Supplemental Report 4/12/10 of P.O. David Henderson | Objection, Rules 401, 402, 801 and 802 |
| 64. | Supplemental Report 4/12/10 of P.O. James Zoresto | Objection, Rules 401, 402, 801 and 802 |
| 65. | Supplemental Report 4/12/10 of P. O. Kevin Middleton | Objection, Rules 401, 402, 801 and 802 |
| 66. | Supplemental Report 4/12/10 of P.O. Boyd | Objection, Rules 401, 402, 801 and 802 |
| 67. | Supplemental Report 4/13/10 of Detective Chase | Objection, Rules 401, 402, 801 and 802 |
| 68. | Supplemental Report 4/21/10 of Detective Chase | Objection, Rules 401, 402, 801 and 802 |

| 69. | Supplemental Report 4/29/10 of Detective Philip Frendo | Objection, Rules 401, 402, 801 and 802 |
|-----|-----|-----|
| 70. | Supplemental Report 4/6/10 of P.O. Eric Bokina | Objection, Rules 401, 402, 801 and 802 |
| 71. | Death Certificate of Kevin Turner | Objection, Rules 401, 402, 801 and 802 |

**Medical Malpractice Defendants:**

| Exhibit No. | Description | Objection |
|-----|-----|-----|
| A | Suffolk County Medical Examiner's Autopsy report for Mr. Turner | Objection, Rules 401, 402, 801 and 802 |
| B | Mr. Turner's Certified Medical Records from Brookhaven Memorial Hospital Medical Center including imaging studies for the presentation of April 6, 2010. | |
| C | Mr. Turner's Certified Medical Records from Stony Brook University Hospital Dated April 6, 2010, through April 28, 2010 including imaging studies. Excluding Dr. Galler's operative report on the grounds that it is inadmissible, hearsay 801-802, is irrelevant under 401, speculation, lack of personal knowledge 602, 403, calls for a conclusion, calls for legal conclusion. Lack of foundation and Pursuant to the Court's Order Dated March 22, 2022, at page 73 as Dr. Galler lacks legal expertise with respect to ETMALA, and that his statements in his operative report were based on several grounds of assumptions. | Objection, Rules 401, 402, 801 and 802 Plaintiff's object to the exclusion of the operative report. |
| D | Death Certificate of Kevin Turner | Objection, Rules 401, 402, 801 and 802 |

| | | |
|---|---|---|
| E | Patient Transfer Agreement between BROOKHAVEN MEMORIAL HOSPITAL MEDICAL CENTER and Stony Brook University Hospital | Plaintiff's object as this document was never produced during discovery. |

**Defendants Police Officers LaRosa and Hamilton Exhibits:**

1. 27 crime scene photos of area of the Turner arrest, accident, Turner vehicle and Suffolk County police cars 514 and 515.

2. Certified medical records for Police Officer LaRosa from Brookhaven Hospital on April 6, 2010. **Plaintiff's object, Rules 401,402,403,801,802**

3. Certified medical records for Police Officer Hamilton from Brookhaven Hospital on April 6, 2010. **Plaintiff's object, Rules 401,402,403,801,802**

4. Misdemeanor complaints and tickets charging Kevin Turner with various crimes and vehicle and traffic law infractions. **Plaintiff's object, Rules 801,802.**

5. South Country Ambulance Co call run report for April 6, 2010.

6. Brookhaven Memorial Hospital lab results for Hematology, urinalysis, chemistry, and toxicology from April 6, 2010. **Plaintiff's object, Rules 401,402,403,801,802.**

7. Division of medical-legal investigations and forensic science supplemental toxicology report issued by Lori Arendt, Forensic Scientist III dated April 20, 2010, regarding Kevin Turner Laboratory no. D2010-00162. **Plaintiff's object, Rules 401,402,403,801,802**

8. Division of medical-legal investigations and forensic science toxicology report issued by Kristen Ferraro, Forensic Scientist I dated April 9, 2010, regarding Kevin Turner Laboratory no. D2010-00162. **Plaintiff's object, Rules 401,402,403,801,802**

9. Division of medical-legal investigations and forensic science serology report issued by Charles S. Wagner, Analyst dated April 27, 2010, regarding Kevin Turner Laboratory no. 10-1371. **Plaintiff's object, Rules 401,402,403,801,802**

**10.** Division of medical-legal investigations and forensic science supplemental serology report issued by Charles S. Wagner, Analyst dated May 28, 2010, regarding Kevin Turner Laboratory no. 10-1371. **Plaintiff's object, Rules 401,402,403,801,802**

11. Division of medical-legal investigations and forensic science DNA-STR report issued by Helen Lee-Wyss dated June 2, 2010, regarding Kevin Turner Laboratory no. 10-1371. **Plaintiff's object, Rules 401,402,403,801,802**

12. Video depicting 530 Agamemnom Avenue, Bellport produced by Suffolk County. **Plaintiff's object, Rules 401,403,801**

The parties hereby agree that all exhibits admitted in evidence are subject to any redactions.

**<u>SO, ORDERED:</u>**

Dated:                  , 2023
Central Islip, New York

_____
JOANNA SEYBERT
United States District Judge

**CONSENTED TO BY:**

GATHMAN & BENNETT, LLP
Attorney for Plaintiff
191 New York Avenue, 2nd Floor
Huntington, New York 11743
(631) 423-7777
Fax (631) 423-7784
jbennett@gathbenlaw.com

By:   John C. Bennett
      _____
      John C. Bennett, Esq. (JB2560)

CARTIER BERNSTEIN AUERBACH
& STEINBERG, P.C.
Attorney for Plaintiff
100 Austin Street, Building 2
Patchogue, New York 11772
(631) 654-4900
Fax (631) 654-0724
Kauerbach@cbaslawyers.com
aspinner@cbaslawyers.com

By:   Kenneth A. Auerbach
      _____
      Kenneth A. Auerbach, Esq.

DENNIS M. BROWN, Suffolk County Attorney
Attorney for Defendant County of Suffolk
H. Lee Dennison Building

100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788-0099
(631) 853-4055
Fax (631) 853-5833
christiana.mcsloy@suffolkcountyny.gov

By:  _Christiana McSloy_____
Christiana McSloy, Esq.

William Patrick Nolan, Esq.
Attorney for Defendant LaRosa
1103 Stewart Avenue, Suite 200
Garden City, New York 11530
(516) 633-0654
Fax (516) 977-1977
wpnesq@gmail.com

By:  _William Patrick Nolan_____
William Patrick Nolan, Esq.

REYNOLDS, CARONIA, GIANELLI & LAPINTA P.C.
Attorneys for Def Kenneth Hamilton
200 Vanderbilt Motor Parkway, C-17
Hauppauge, NY 11788
(631) 231-1199
Fax (631) 300-4380
amlapinta@rcgllaw.com
kwood@rcgllaw.com

By:  _Kyle Wood_____
Kyle Wood

LEWIS JOHS AVALLONE AVILES, LLP
Attorney for Defendants BROOKHAVEN MEMORIAL HOSPITAL
and  MARGARET  L. MACLEOD, M.D.
1377 Motor Parkway, Suite 400
Islandia, New York 11749
(631) 755-0101
Fax (631) 755-0117
daaviles@lewisjohs.com
cbhickey@lewisjohs.com

By:  _Deborah A. Aviles_____
Deborah A. Aviles, Esq